We'll hear from counsel on United States v. Werdene. It's a good thing I know French, John. Touche. Otherwise I'm going to continue to talk. You would have been in an awkward moment. Yes. All right. Good afternoon. Oh, my goodness. Good afternoon. Good afternoon, Your Honors. My name is Brett Schweitzer. I'm here representing Mr. Werdene in this manner at this juncture. I'd like to reserve three minutes for rebuttal. Very well. Thank you. If I may suggest, the case has been substantially narrowed, I believe, through the briefings The parties agree that this was a Fourth Amendment search. A warrant was required. That really leaves two issues in the case. One is whether Rule 41 was violated at all. That has boiled down to the tracking device issue. And then, two, whether suppression, assuming there is a Rule 41 violation, whether suppression is appropriate. We have briefed extensively the tracking device issue, both in terms of what we argue is the government's waiver, the merits, and the weight of authority on this issue. I would propose to rest on that briefing today. I will certainly answer any questions Your Honors have. If not, I would turn to the suppression point.  And I hope I leave the court with a simplifying what I believe is the easiest way to resolve the case. First of all, I've always had some folks say that, whether they're on this side of the V or the other side of the V. It can be complicated. It turns on, of course, we've briefed multiple issues. Is the Rule 41 violation constitutional or non-constitutional? If it's constitutional, is it a particularity problem or is it the fact that it's a warrantless search? If it's non-constitutional, the prejudice standard under Burke applies. I would focus the court because I think the path of least disagreement between the parties at this point is that this was a prejudicial violation of Rule 41, which would require under Martinez-Zayas and under the Burke test suppression if the search would not have occurred, except for the fact of the Rule 41 violation. So I would suggest to the court that is the, as much as I'd like to talk about particularity, and I certainly will, and I'll often get to cite cases from the 1700s, I do think prejudice is the easiest way to resolve the case. So with, on prejudice, really it becomes a quite easy issue. It's quite clear that had Rule 41 not been violated, the search would not, the NIT search would not have occurred. The discovery of Mr. Bertine's address would not have occurred. The warrant from the Eastern District of Pennsylvania would not have occurred. Everything is downstream from the NIT warrant. And moreover, that is really the test. The only response that the government has on this is that, well, somehow, you know, perhaps a magistrate in Pennsylvania or in another district could have issued this warrant, and that's just not the case. It's not true. So if, in fact, this is a constitutional violation and prejudice occurred, we could agree with you on that, but why is the good faith exception still out there? For one, one of the most recent cases, the Wharton case, which came out of the 10th Circuit, dealt with these same issues. It certainly did, and the Wharton case. Well, assuming it is a violation, assuming it's constitutional, well, you know, how does this differ from Leon? Okay. It differs significantly. I'll pause for a second, and I would ask the Court. There are two circuit cases out there now, right, the 8th Circuit and the 10th Circuit and Wharton and the Morkman. They both get the same. They both do get the same, but not through the same path. And I would pause for a second. And I would urge the Court to take the Wharton approach to good faith rather than skip over all of the analysis, which is what Wharton did, because I do think that the parties benefit from some rulings on whether this type of technology is permissible. So Wharton jumped, sort of leapfrogged, right? And Wharton didn't. Wharton went through the work, and then. So you're saying, all right, you'd like to see a Wharton analysis so that there's some law. I think that's right. Now, getting to what the law should be on good faith, when we look at good faith, I think the poll star here in this circuit has to be Katzen, right? At Katzen we had a situation where, of course, the Court is very familiar. The issue was whether the GPS tracking was a search. And what did we have there? We had a 3-1 circuit split. We had DOJ guidance on the issue saying it's not a search. You don't need a warrant for this. And you had Supreme Court law, Knotts and Caro, that despite, and I was involved as amicus in the Katzen case, despite my attempts to distinguish those cases, provided strong support for the government's position. When we line up that scenario with what we have here, it is difficult to say how we could possibly make a finding of good faith. Here, at the time the Agent McFarlane and the folks in DOJ sought this warrant, there was one written opinion on whether this would be a Rule 41 violation. That was the In Re Warrant case out of Texas. And it said, no, this is not a permissible search under Rule 41. Denied the warrant. Denied. That was the only authority in play. We had DOJ guidance that, unlike in Katzen, cut against the government. And this is the CSIPs, the Computer and Intellectual Property section internal guidance that we cited in our brief. So DOJ guidance said, no, you ought to, in these situations, seek multiple warrants. If you believe that there is data out there in multiple districts, you need to seek. So what would you do in this situation? You know, I heard that, read that argument, I should say. And I was, I think when I was in the government, it was 93 judicial districts. I think it's 94 now. I'm not quite sure. In a case like this, how would you make any kind of determination as to where you seek the warrant? I mean, okay, we're in the Eastern District of Virginia, the Eastern District of Pennsylvania. But I presume that you're saying, in this instance, it could be anywhere. So you should go everywhere. How would you go about doing that? It's not me saying that, Your Honor. That's DOJ saying that. So DOJ has guidance on this. Luckily, we're not writing on a clean slate here. And it says when, this is a new, admittedly, this is a new frontier with the technology. And the specialists at DOJ said, okay, well, you know, we got this Rule 41 problem. This was back in 2009, six years before this NIT warrant. We have a Rule 41 problem here. What should be done is there should be multiple warrants sought in each district where you think the NIT is going to land. In this particular case, that meant 93 districts. Now what – I can understand you wanting us to proceed along the word analysis. But one of the things which, in Workman, I think goes to this question that you were talking about, is Workman looked at this as to whether or not the good faith exceptions should apply, and cites and put that upon that there were eight district courts that got this question wrong. So if eight judges around the country got this question wrong as to whether or not this was a search, how can we hold an FBI agent who presumably is less trained in the law than has eight district court judges to a higher standard? You can, Your Honor, for several reasons. First of all, it's not an ex post analysis. After the fact, when you look at good faith, you look at what the officers or, you know, what the agents – the law that they were operating under at the time. And it wasn't the case that there was some sort of divide in authority. There was one case on point. That case said, no, it's a Rule 41 violation. There was the internal DOJ guidance on point said, oh, better go to multiple districts. That's how we assess good faith. And even if you – even if sort of after the fact we look and say, well, you know, maybe this is, you know, from a plenary perspective, maybe it's a little ambiguous. You know, there are eight judges who have ruled that it's a B4, it's a tracking device warrant. We also need to contextualize that. Eight courts out of dozens, dozens and dozens. I don't have a head count for you because it's evolving, but well over 50 or 60 cases. So I think that while not insignificant, I think the first point is we don't really look at that. But second of all, you do have to put it in context. And here the overwhelming authority is that this was a Rule 41 violation. When we look at all the district courts who have ruled on it, now the only circuit to have ruled on it, and I really don't – and we could get into a tracking device, but I have very good reasons to give you why this isn't really even a close call on the tracking device point. Let me ask you this question. If we deem that it was – that the warrant was void ad minisio and violated of the Fourth Amendment and Section 636A, what police misconduct do you seek to deter by suppression that's not authorized by the newly minted 41B6? What we're deterring here is the government getting ahead of the law. That is what we're deterring. When the government – it's easy to look at this case and sort of say, well, something had to be done. There's a child pornography website. That's bad. We seem to have this snafu with these procedural rules and the law. Somehow we need to work around this because the paramount issue is not taking the website offline but finding the consumers of the website. That's not the appropriate way to look at this case. What we're deterring here is the officers taking a step that is quite clear under the law as it stood at the time that they acted that this was not authorized. So that's what we're deterring. So now Rule 41, Your Honor, is correct, has been amended. So a NIT search, you know, today is going to proceed, at least insofar as Rule 41 is concerned, that would be valid. But the issue is not, well, there's nothing left to deter. The issue is when agents are faced with this situation, as will no doubt happen in the future with technology and with how all of these issues that are coming up around the Internet and computer searches and everything else, the government will face this problem tomorrow. It probably has already faced it. And what the court needs to tell the government is you don't get to race ahead. You either follow your guidance. There was a way, perhaps, at least according to DOJ's internal guidance, to get this done right at the time. Whether that was deemed too cumbersome. So let me ask you this. Let's assume they did 93 warrants or 94, whatever the number is, right? You'd have no case? Well, I think there would be issues. Or it would be different. It would be different. It would be different. There would be a question as to whether there was a Rule 41 violation as opposed to a straight-up particularity problem. I mean, there are other issues in the case. But in terms of Rule 41 is concerned, you know, and, again, I'm pointing to sort of what the government's reading of what would have been permissible was. And the government's guidance was go to multiple districts. Now, whether that would have actually, you know, whether there – I think that would have been teased out in litigation as to whether, depending on exactly what those warrants looked like, how they were cabined and everything else, whether there were additional problems with that. But the point I believe that is pertinent for the court's consideration is, from the government's perspective at least, there were options open to it. Or try to expedite the rule process. Or, you know, it was 2009 when NRA warrant came out. Within five months of that case, the government went to the Rules Committee and said, you know, we need to change this rule because we want to do these NIT searches. That is powerful evidence, powerful evidence, Your Honors, of a consciousness that there is an issue here. Well, what rule would you structure for us on this good faith exception under circumstances like that, like this, that wouldn't be so broad if it included other such good faith exceptions in the future? Not just in the federal law, but everywhere. Sure. I would stick with the rule we have. I would stick with Cass and what the other courts say, which is, if, you know, the rule isn't, if there's binding authority forbidding it, you know, then you can't do it. But everything else is fair game, good faith. That's not consistent with the law. What the law says is you look at what was facing the agents of the government at the time and say, look, would a reasonably well-trained officer have appreciated the illegality here? Okay? And that's all you need in this case. You don't need anything else because- Why shouldn't we analyze it slightly different because of the intervention of the magistrate judge? Because of what, Your Honor? The intervention of the magistrate judge. I mean, you know, and remember Katzen? I didn't agree with a lot of folks on Katzen, but that's okay. But in that instance, the question was, did you go get the warrant? And, you know, you had Jones, but, you know, the timing wasn't right, so, you know, you didn't get it, and so forth. But here, the question is, I suppose, you're making a slightly different argument than I thought. I'm sorry. Is your argument that we shouldn't analyze this, that you got a warrant so you can seek the protection of having gone to a judicial officer? It's, you may have gotten a warrant, but you didn't get a warrant for all these other places. So it's more akin to Katzen than it is to Herring and all those other cases where, you know, it might be a fluke or you're relying on a judicial officer. So you're saying here, look at all those districts where there was no warrant, and that's the way we should have it. Right. And I should be, again, to underscore the point, I'm not suggesting that would necessarily have resolved the case, you know, going to every district, but that's at least what the government thought was okay to do. But, yes, I think what your Honor is pointing to gets to the void ad minitio concept, which is, you know, if there's no jurisdiction for the magistrate, then it's void. You know, I think the leading discussion in this is Judge Gorsuch's concurrence in Kruger. The government doesn't argue with that. What they argue on that point is that, well, the magistrate here did have jurisdiction because at least she could authorize in Virginia, which is wrong. But it doesn't bicker with the basic point. So if you, here, it doesn't really matter that there was a magistrate, that they went to some magistrate for an eastern district of Pennsylvania search. I mean, you could look at Clover. That's the D.C. Circuit case where they said it didn't matter that a magistrate in D.C. authorized a tracking device to be placed in any of three districts. You know, the evidence is suppressed there. I see my time is up, Your Honors. We'll get you up. Thank you. Good afternoon, Your Honors. May it please the Court. My name is Michelle Morgan. I'm an assistant U.S. attorney on behalf of the government this afternoon. The defendant in this case took numerous affirmative steps to hide his own criminal conduct and ensure that technological means would make it impossible for the government to know for certain where he was. And because he took those technological steps, we did exactly what courts should want the government to do in that the agent sought a search warrant. He obtained a search warrant in the district where the tracking device was going to be attached, and he obtained a search warrant that contained probable cause that was particular, and he did so from a detached and neutral magistrate. In other words, he followed the very procedure that we want agents to follow in such a circumstance. It is the government's position that we have not waived the argument as to Rule 41b-4. In that, this Court may have... That's a tough argument, though, isn't it? I don't believe so, Your Honor. First of all, I thought that you waived it in the district court. Just give me a second. Let's see. I thought that you waived that below. What I believe we indicated in the district court, Your Honor, was that the rule doesn't explicitly speak to this issue, meaning the rule doesn't explicitly say government can deploy digital investigative technique in this fashion. But if you thought it was a tracking device, then you would have applied for a tracking warrant. Your Honor, I think what's important to note is that it is in violent jurisprudential rule that this Court can affirm on any ground supported by the record that the appellee is advancing. We are advancing a legal argument, not a factual argument, so there's no need to further develop the factual record below. And I'm looking explicitly at American Railways Express, the 1924 case that has recently been cited affirmatively. I am not, Your Honor. Okay. I would disagree respectfully, Your Honor, given the nature of how this device is deployed. In order for this tracking device to attach, a defendant has to affirmatively contact the website in the Eastern District of Pennsylvania. There's an electronic communication that goes to the website from, sorry, not Pennsylvania, Virginia. Payload does its thing. There's a dispersal or obtaining, if you will, of all of this information. You know, when I think of tracking device, you know, maybe I'm a little slow on technology, but I think of cats and I think of, you know, let's put something on and it'll track. Here it's not really tracking at all. It's the exploit. As I understand it, tell me if I'm wrong. As I understand it, the exploit is deployed, if you will, and when it hits Mr. Wardeen's home computer, the payload then comes into effect, and all of this information, IP address, et cetera, et cetera, is then dispersed, if you will, back to the government situation so the government now has all of that information. That's not really a tracking device. Well, Your Honor, my understanding of what's happened is Mr. Wardeen contacts the website in the Eastern District of Virginia. The device is then deployed in the material he has requested and goes back to his computer here in the Eastern District of Pennsylvania, and that device, much like a tracking device, then relays the location of the computer. It also relays additional information, as the Court pointed out, but I think what's critical is the piece of information that we utilized was the location of the computer, the IP address of the computer, which allowed us to determine that Mr. Wardeen was, in fact, in this area. Isn't this NIP really more like a cookie as opposed to a tracking device? I mean, you installed something on Mr. Wardeen's computer, but you're not using it. Much like attaching a tracking device to a vehicle, Your Honor. We installed something that said, I am here, and once we learned where he was, then we got the subsequent warrant to go to his location. Let me change the focus. It's a little bit like a drone. I mean, it's almost like sending a drone out if you've got the proper information and attaching it to someone's phone. Except it wasn't sent out into the ether. It was particularly connected to information that Mr. Wardeen requested in the form of child pornography and went to his computer. Does the government contest... I'm sorry. I'm just saying, you're calling it a virtual trip. Correct. Correct. Attached to the material that Mr. Wardeen himself asked for. All right. Does the government contest the appellant's characterization and reliance on, you know, your adversary and I talked about Judge Gorsuch's concurrence in Kruger. That the principle animating the common law at the time of the Fourth Amendment's framing was that the warrant may travel only so far as the power of its issuing official. So we have this whole discussion about Katzen and whether you think about this as a... and the application of the good faith exception as Katzen-like in that the police are acting without judicial imprimatur as opposed to, well, they did get a warrant. You know, the scope of the warrant might not have been what it should have been. So I'm trying to figure out what your view of the application of this Kruger-Katzen notion, if you will, and that its operation should lead to not applying the good faith exception. Well, certainly the good faith exception was applied in Katzen and I think we are in a far better position in this case than in Katzen for the reason that the court yourself pointed out in dissent, which is we went to a detached and neutral magistrate. We followed that procedure so that we could have someone neutral reviewing the warrant to make sure that it was appropriate. So there's an even greater reason to apply good faith here. I guess his point is slightly different than theirs. His point is, yeah, you did go to a neutral and detached magistrate, but you did that not in the right place. You went to EDBA instead of EDPA and you should have gone to EDPA. Correct, and if we had gone to EDPA, we would have obtained a warrant. But you didn't, and presumably the argument is that's the police misconduct that is up for deterrence, that you should be going to the particular districts to see the neutral and detached magistrate because those are the districts in which you anticipate having the opportunity to get the information that you seek. Right, and as I understand it, the defendant is arguing we should have gone to all 94 districts, except at the same time the defendant is arguing our warrant was not particularized enough because it did not identify the location to be searched, which we could not have done in any of the 94 districts because the most we could have said in any of the 94 districts is maybe there's a computer in this district that's going to access the website. So I'm not sure how the defendant can argue both sides of that. But in any event, the defendant has characterized this as the government outpacing the law when it's really the defendant and other like-minded persons outpacing the law, criminals outpacing the law by developing craftier and craftier means of violating the law. And certainly the answer is not if you've done that and the law has not caught up and the agents are going to a detached and neutral magistrate to obtain a search warrant, you get a free pass. And anyone who's engaging in... But he wants you to rely, I thought part of his argument was, well, Judge, look at their own DOJ manual. And it says that if multiple warrants are necessary, let's see now, agents should obtain multiple warrants if they have reason to believe that a network search will retrieve data stored in multiple locations, that that's really the crux of the violation, if you will. I understand that, Your Honor. But a situation where you anticipate that specific multiple jurisdictions are going to hold evidence is different than one where you have no idea where that evidence might be. And I don't think going into 94 separate districts is any more realistic than going into the one district that we went into. If we can't say with any more particularity, there's absolutely going to be something there. So does that mean because of technological advances, you're never going to go in, at least in the first instance, you're never going to go into multiple districts because the situation will always be the same, right? Because you don't know the expanse of the computer network, if you will. So it's never going to make sense to go into multiple districts. Is that the argument that we should anticipate from the government going forward when it comes to the technological advances that allow more and more sophisticated searches? Well, certainly not now that we've had this amendment to Rule 41, Your Honor. I mean, certainly now we know under Rule 41b-6 that we can go into the most obvious district and possibly search locations outside. Will there still be a scenario, a technological scenario, that Rule 41b-4 will need to be used rather than Rule 41b-6? I imagine there could be. I myself am not a computer expert, but I imagine that there could be. And I think the ultimate question that comes to Your Honors is, what do we want an agent to do in that circumstance? Do we want them to just run off without a warrant and claim exigent circumstances? Right. We want them to seek a warrant. But I guess we'll try to figure out, you know, what's the need to work? Us getting to whether this was or was not a tracking device, if you now have B6 to work with. That's one question. The other question would be, what do we want agents to do under the good faith exception? Mr. Schweitzer argues that when this warrant was obtained, the engraved warrant was out there and the directive from DOJ was there, and perhaps he's arguing that at least everyone involved should have known that they were at least going out on a limb in getting a warrant. We want to say if circumstances are such that the officers are going out on a limb to, say, get a minimalist warrant rather than a 94, just a countrywide warrant, that that's okay if they make a mistake? We're not going to suppress the evidence? No, Your Honor. I think that Workman is instructive on this point because it talks about the fact that we should not be imputing a lot of legal nuances to the agent who's seeking the warrant. Well, I've already raised that point, but I think I asked the question in a different direction. The focus is the good faith exception. If there are risks, it's uncertainty. Uncertainty slash risks. If the agents do go out on a limb and say, We've got to get 94 warrants here. We're going to have to go to D.C. We're going to have to go to DOJ to coordinate this. We're going to have to go to the other U.S. Attorney's offices. This is going to be a nightmare. We're not going to get it done quick enough. Let's see what we get over this two-week period as it didn't play then, and we'll go from there. Is that okay? Is that still a good faith exception? What entitles you to the good faith exception is was it objectively reasonable in this case for the agent to do what the agent did? And in all cases, regardless of how we get to good faith, we need to balance the benefit of suppression against the cost. It has to be more concise. Is uncertainty going to affect the reason for this? I think the ultimate answer, Your Honor, is in all cases where there is uncertainty, seek a search warrant, which is exactly what the agent did here. So in other words, go to the magistrate judge, detach the magistrate judge, and make a decision? Correct. Judge Nygaard? I have no questions.  We'll hear Your Honor's rebuttal, sir. Thank you, Your Honors. When there's uncertainty, follow DOJ guidance. That's not a difficult principle. It's eminently reasonable, and in fact, that's what this court said in Katzen. I mean, if you have Katzen, right, where the court said, look, even reliance on non-binding precedent is sometimes going to be unreasonable, and Katzen said that. There's going to be difficult line-drawing problems. It was one of the downsides of Katzen going forward was there were line-drawing problems. But it's almost nonsensical to say if non-binding case law that favors your position, you might still not protect you under good faith. How can it possibly be the case that it's good faith what we have here? Now, the government has come up here and said, you know, Mr. Rudine's a bad guy. He's hiding stuff, and so what were we supposed to do? We went to a magistrate. That's not how the Fourth Amendment works. Presumably somebody created blinds someday, you know, in history for the windows, right? Did that authorize the government to throw up its hands and say, we've been symied. There must be a way for us to look into that window. No, that's not how the system works. It doesn't matter that they went to a magistrate. They went to a magistrate without authorization, without jurisdiction. And, again, not in a sort of, geez, gee whiz, what do we do? They had guidance here. They had guidance. Here's what I'm not getting, and forgive me if I'm seeming not to get it, but if I followed your guidance and if I understand the technology, they have no idea where it's going to, well, they have this set up in the Eastern District of Virginia, right? They have no idea who's going to come in to that set up when they're prepping to do this. Sure. Yeah, I think I know where your honor's going. And the answer is they just need probable cause. They don't need to know a certainty. In fact, the DOJ guidance says you're not going to know. I mean, sometimes maybe you'll know. Maybe you'll know that the information is actually in computers in New York and in Nebraska. But the guidance itself says when you don't know, when you have any reason to believe, then you ought to seek multiple warrants. And so when you go to that situation, you don't have to show a magistrate with certainty. All you have to show is there's probable cause. And in this situation where you have thousands and thousands and thousands of registered users, we're not debating that there's probable cause to think there's somebody in every district. But isn't it, it seems that you want the government, and there's no reason they shouldn't do this, but I think that it's going through a ministerial step. They should have done this 94 times because until the NIT is sent off on its way, you don't know where it's going to go. So when people are going through the Eastern District to then get to Clayton, as I understand it, you know, the rerouting of it, at that point you wanted them to go to all 94 districts? No, I don't really want them to go. I'm not pushing the 94 district resolution. I'm just looking at what the government, their lawyers told them, told their agents to do with this guidance. However, what would have happened in that situation is you would have done that instead of, this is not hugely onerous. This is a duplicate warrant application that does need to be different in each district in terms of cabining the search to within a district. But, you know, that's all done up front. And then, you know, whenever there's a search, as happened here, perfectly foreseeable, that there would be searches in every district, there would be a warrant. Now, again, this is the government's position, but we have arguments as to whether that would actually be, yes, perhaps. But the point here, for good faith, I'll just say, I won't dwell on tracking device, Your Honor, but Judge Greenway, you're absolutely right. It doesn't work that way, and I would point to any number of places, including the affidavit by Agent McFarland. It's not a, it never says, the warrant never says, I'm here. That doesn't happen. That's not how it works. And finally, Your Honors, just to sum up, this court can distinguish. This court doesn't have to. Of course, if it rules that good faith is not available, there will be tension or inconsistency with Workman and Horton. But I would urge Your Honors to take an independent look at this. Those courts did not address some of these issues that we're bringing to the court's attention about the internal guidance and everything else. In fact, they said, much like you might sort of say without understanding what actually happened here, they said, well, how can we expect agents to really know anything? We must trust a magistrate over an agent. That doesn't really take account of the record. Thank you, Your Honors. Okay, thank you so much. I'm glad I think I understand the technology. This is an interesting case, and we'll take it under advisement. Thank you all. Have a good day.